UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL KIMBLE,

       Plaintiff,                            Hon. Robert J. Jonker

v.                                            Case No. 1:17-cv-1108

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 28 years of age on his alleged disability onset date. (PageID.288). He successfully completed high school and worked previously as an industrial cleaner, paper

sorter, and trimmer. (PageID.64-65). Plaintiff applied for benefits on March 27, 2014, alleging that he had been disabled since January 1, 2005, due to anger issues, arthritis and bone spurs in his knee, medial tendonitis in both feet, and attention deficit hyperactivity disorder (ADHD). (PageID.288-98, 332).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.154-282). On August 17, 2016, Plaintiff appeared before ALJ Beth Contorer with testimony being offered by Plaintiff and a vocational expert. (PageID.88-152). Following the submission of additional medical evidence, the ALJ conducted a supplemental hearing on February 3, 2017. (PageID.73-86). In a written decision dated April 12, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.56-66). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.41-46). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) congenital deformity of the right arm/hand; (2) bilateral knee osteoarthritis; (3) obesity; and (4) ANA titer suggestive of connective tissue disease, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.58-60). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) no pushing/pulling

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

with his right (non-dominant) upper extremity; (2) no work involving the right (non-dominant) upper extremity; (3) he is limited to work that can be performed either standing or sitting, with the ability to alternate between positions up to four times hourly; (4) he cannot kneel on his right knee, but can occasionally kneel on his left knee; (5) he cannot climb ladders, ropes, or scaffolds; (6) he can occasionally crouch, crawl, and climb stairs; (7) he can frequently balance and stoop; (8) he can frequently operate foot pedals; and (9) he must avoid hazards including heights, vibration, and sharp objects.   (PageID.60).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed more than one million jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (PageID.134-52).   This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.     **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained less than 150 pages of medical treatment records and statements by Plaintiff. The ALJ described this evidence as follows:

> The claimant testified that he lives alone in a mobile home, pays rent to his sister who owns the home, and is able to care for his personal needs, do laundry, cook, and watch his young children 3 days a week. He also testified that he is on a team for shooting pool, uses a cane for walking, and has knee pain. He testified that he is able to walk 200 yards, stand for 10-15 minutes, and lift 5-10 pounds. The claimant testified that he takes no medications for pain and has no mental health treatment. The claimant also testified that he has bilateral foot tendinitis and has difficulty walking when the tendinitis acts up. He also testified that he is only able to lift 5 pounds with the left hand.
>
> In May 2014, the claimant indicated in his function report that he was living with his girlfriend and his children. He indicated that he had some problems with his knees and feet, but that he was able to care for his personal needs, take care of his children, and perform household chores. He also indicated that he is able to cook, do laundry, clean dishes, mow the lawn, play with the kids, and play pool (Exhibit 6E).
>
> In May 2014, Christine Presock, the claimant's sister, indicated that the claimant had issues with his foot and knees, such that the claimant had difficulty with prolonged standing and sitting. She also indicated that the claimant was able to care for his personal needs, perform light housework, and care for his children. She also indicated that the claimant was a good cook and was able to clean dishes (Exhibit 4E).
>
> In March 2014, the field office personnel noted that the claimant exhibited some problems sitting and walking, no difficulty writing, and no anger issues (Exhibit 2E). This assessment is given some weight because it is consistent with the record as a whole. The objective clinical findings corroborate limitations regarding prolonged sitting and walking but no limitations regarding social interaction.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In terms of the claimant's alleged difficulty with prolonged standing and walking secondary to chronic knee pain and foot pain, the objective medical evidence corroborates the claimant's allegations. The claimant has a history of right knee pain and bilateral foot pain, such that the claimant requires some limitations regarding sitting, standing, and walking.

On August 29, 2013, Dr. Highhouse, an orthopedic surgeon, evaluated the claimant for right knee pain. The claimant exhibited tenderness in both knees, mild discomfort with range of motion of the knees, no edema, and no limp. The x-rays of the claimant's right knee indicated severe joint space narrowing with bone on bone contact. The claimant was referred to physical therapy and weight loss was recommended (Exhibit 6F, pages 2, 4, 6).

On June 27, 2014, the claimant attended a consultative evaluation conducted by Dr. Geoghegan. The claimant indicated that he was able to walk one mile, had difficulty sitting or standing for more than 1 hour at a time without change of position, and did not need a cane for ambulation. The claimant exhibited a normal gait and had no difficulty getting on and off the examination table. The claimant exhibited 5/5 strength in the lower extremities, intact sensation, and negative straight leg raising bilaterally. Additionally, Dr. Geoghegan noted that the claimant had no problem shopping, cooking, or cleaning (Exhibit 8F).

On June 26, 2014, Laura Kracker, a limited licensed psychologist, noted that the claimant played pool competitively, enjoyed fishing, was able to perform household chores, and was able to drive, all of which indicate an ability to perform a wide range of activities (Exhibit 10F).

Therefore, as of June 2014, the claimant's physical evaluations were relatively unremarkable. The claimant exhibited a stable gait and good strength in the lower extremities. Additionally, the claimant's daily activities indicate an ability to perform a wide range of activities.

On October 26, 2015, Dr. Cervin, the treating physician, evaluated the claimant for bilateral knee pain and back pain (Exhibit 12F, page 1).

On May 2, 2016, Dr. Cervin noted that the claimant complained of left great toe pain and reported that walking was painful (Exhibit 12F, page 6).

On May 9, 2016, the x-rays of the claimant's left knee indicated no acute osseous or articular abnormalities. The x-rays of the claimant's left toe indicated mild osteoarthritis of the 1st metatarsophalangealjoint. The x-rays of the claimant's right hip indicated no acute osseous or articular abnormalities (Exhibit 13F, pages 11, 12, 14).

Therefore, the radiographic findings of the claimant's left knee, left toe, and right hip were relatively unremarkable.

On July 22, 2016, the claimant was evaluated in the emergency room for complaints of left foot pain. The claimant indicated that he had been doing yard work, which indicates a capacity for performing significant exertional activities. Nonetheless, the claimant exhibited only mild tenderness over the 1st and 2nd metatarsophalangeal joint. The claimant was diagnosed with left foot tendinitis (Exhibit 13F, pages 18, 21).

On September 23, 2016, the claimant attended a consultative evaluation conducted by Dr. Rossknecht. The claimant complained of pain in his feet and knees. Dr. Rossknecht noted that the claimant was able to maintain his activities of daily living and perform housework. The claimant exhibited a slow steady gait without a limp and did not require the use of a cane. The claimant exhibited mild difficulty getting on and off the examination table, very slight limitation of flexion of the lumbar spine, slight limitation of abduction of the shoulders, normal range of motion of the knees, 5/5 strength in the lower extremities, intact sensation, and normal reflexes. Dr. Rossknecht noted that the claimant was able to complete most of the tasks without difficulty except moderate difficulty squatting (Exhibit 14F).

Therefore, the radiographic findings of the claimant's right knee indicate severe joint space narrowing, such that the claimant requires postural limitations secondary to right knee pain. This is consistent with the assessment by Dr. Rossknecht that the claimant had difficulty squatting. However, the claimant consistently exhibits good strength in the lower extremities, good range of motion of the

knees, intact sensation, normal reflexes, and a steady gait without a limp.

The claimant has also been diagnosed with a congenital deformity of the right nondominant upper extremity, such that the claimant exhibits limitations regarding use of the right upper extremity. However, the claimant has no significant limitations regarding use of the dominant left upper extremity.

On June 27, 2014, Dr. Geoghegan noted that the claimant exhibited limitation of motion of the right elbow and wrist, normal grip strength on the left, full dexterity with the left hand, 5/5 strength in the left upper extremity, and 4/5 strength in the right upper extremity (Exhibit 8F).

On October 26, 2015, Dr. Cervin noted that the claimant complained of bilateral shoulder pain (Exhibit 12F, page 1).

On March 29, 2016, the x-rays of the claimant's cervical spine indicated only mild left C3-4 foraminal narrowing (Exhibit 13F, page 6).

On May 9, 2016, the x-rays of the claimant's left shoulder indicated no acute osseous or articular abnormalities (Exhibit 13F, page 13).

On September 23, 2016, Dr. Rossknecht noted that the claimant exhibited slight limitation of motion of the cervical spine, slight limitation of abduction of the shoulders, normal range of motion of the left hand, normal grip strength on the left, 5/5 strength in the left upper extremity, 5/5 strength in the right upper extremity, intact sensation, and normal reflexes. Dr. Rossknecht noted that the claimant had severe difficulty with dexterity of the right hand but normal grip strength in the left hand (Exhibit 14F).

In July 2014, Dr. Tanna, the state disability physician, concluded that the claimant could perform light work with occasional pushing/pulling with the right hand, occasional fingering with the right hand, no handling or twisting with the right hand, frequent posturals, no climbing ladders or ropes, and avoiding workplace hazards (Exhibit 1A). This assessment is given partial weight because it is consistent with the evidence regarding use of the upper extremities. The objective medical evidence does not indicate significant limitations regarding use of the left upper extremity. However, since this assessment by Dr. Tanna, the claimant has been diagnosed with osteoarthritis in the knees, such that the claimant requires some limitations regarding prolonged standing and walking.

> In September 2016, Dr. Rossknecht concluded that the claimant could lift up to 20 pounds occasionally, sit for 30 minutes at a time up to 4 of 8 hours, stand for 15 minutes at a time up to 2 of 8 hours, and walk for 15 minutes at a time, up to 2 of 8 hours. Additionally, the claimant was limited to occasional use of the right upper extremity, occasional reaching overhead with the left upper extremity, and frequent reaching and pushing/pulling with the left upper extremity. Also, the claimant was limited to frequent stooping and occasional climbing stairs, kneeling, crouching, and crawling. The claimant was also to avoid unprotected heights and moving machinery (Exhibit 14F). This assessment is given partial weight because it is consistent with the record as a whole regarding limitations with standing and walking due to bilateral knee pain. Additionally, the claimant requires significant limitations regarding use of the right upper extremity. However, the objective medical evidence does not corroborate limitations regarding repetitive use of the left upper extremity. Moreover, the claimant's daily activities, which include playing competitive pool, performing household chores, cooking, and doing yard work, do not corroborate limitations regarding use of the left upper extremity.
>
> In sum, the above residual functional capacity is based upon the objective medical evidence, the assessment by Dr. Rossknecht, and the claimant's daily activities. The above residual functional capacity accommodates the claimant's difficulty with prolonged standing and walking, limitations regarding use of the right upper extremity, and postural limitations due to the claimant's osteoarthritis in both knees. The above residual functional capacity is consistent with the claimant's daily activities, which include playing competitive pool, maintaining his activities of daily living, performing household chores, and driving.

(PageID.61-64).

## II.      Plaintiff's Subjective Allegations

As indicated above, the ALJ discounted Plaintiff's subjective allegations of pain and limitation on the ground that such were inconsistent with the administrative record, specifically the medical evidence and Plaintiff's reported activities.   (PageID.61-64).   Plaintiff argues that he is entitled to relief because "the ALJ improperly overemphasized Plaintiff's daily activities" in assessing his credibility.   Specifically, Plaintiff argues that the ALJ equated his daily activities and recreational pursuits with "full time work."   The Court is not persuaded.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[2]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to assess a claimant's subjective allegations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ did not state or even suggest that Plaintiff's daily activities and recreational pursuits were somehow equivalent to full-time work. Rather, the ALJ properly assessed whether Plaintiff's daily activities and recreational pursuits were inconsistent with his assertion that he is precluded from working. It is well accepted that an ALJ is permitted to consider a claimant's activities and pursuits when assessing the weight to afford the claimant's subjective allegations of pain and limitation. *See* 20 C.F.R. § 416.929(c)(3)(i); *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ can properly discount a claimant's subjective allegations which are inconsistent with his daily activities); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) (same).

The ALJ assessed the evidence of Plaintiff's daily activities and recreational pursuits and concluded that such were inconsistent with Plaintiff's allegations of disabling pain and limitation. Plaintiff testified that he participates in a competitive pool league "one or two nights a week" and, moreover, that this activity requires him to travel. (PageID.111-12). Plaintiff testified that he continues to drive an automobile. (PageID.112). Plaintiff testified that despite possessing medical insurance he does not take pain medication or participate in mental health treatment. (PageID.114-17). Plaintiff testified that he can walk "a couple hundred yards," stand for 10-15 minutes, and sit for 20-25 minutes. (PageID.121). Plaintiff's sister reported that Plaintiff regularly prepares meals, washes dishes, cleans the house, washes laundry, and mows the grass. (PageID.343). While Plaintiff's sister reported that Plaintiff cannot stand continuously when performing these activities, (PageID.343), this functional limitation is sufficiently accounted for in the ALJ's RFC determination. In sum, the ALJ's decision to discount Plaintiff's subjective

allegations complies with the relevant legal standard and is supported by substantial evidence. Accordingly, this argument is rejected.

**III.        Plaintiff's Residual Functional Capacity (RFC)**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").  As noted above, the ALJ concluded that Plaintiff can perform a limited range of sedentary work.   Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment does not account for his alleged intermittent explosive disorder.   Plaintiff also argues that the ALJ improperly concluded that he can occasionally climb stairs and frequently balance.

The ALJ expressly considered Plaintiff's alleged issues concerning his temper. Specifically, the ALJ stated:

> The next functional area is interacting with others. In this area, the claimant has mild limitation. In July 2014, Dr. Gallagher, a state disability psychologist, concluded that the claimant would have moderate limitation with social functioning (Exhibit lA). However, this assessment is given little weight because the evidence of record since this assessment indicates that the claimant exhibits no more than mild limitation interacting with others. The claimant testified that he shoots pool competitively, as part of a team, such that the claimant is able to interact with a significant number of people on a consistent basis without difficulty. Although the claimant testified that he has difficulty getting along with others, his ability to interact appropriately with his team members indicates that the claimant is able to interact with others. Additionally, in June 2014, Ms. Kracker noted that the claimant indicated that he could get along with family,

> further supporting a finding that he does not have more than mild difficulty getting along with others.

(PageID.59).

As the evidence discussed above makes clear, this assessment is supported by substantial evidence. Plaintiff's argument in this regard is simply that the ALJ should have weighed the evidence of record differently or that this Court should re-weigh the evidence. However, such is not a basis for relief. *See, e.g., Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (it is the ALJ's responsibility to weigh the evidence); *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411, 414 (6th Cir., Apr. 1, 2011) (the court "reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 26, 2018

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge